2000 ME 125

**James D. SAWYER**

v.

**BOARD OF LICENSURE IN MEDICINE.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 25, 2000.

Decided June 30, 2000.

---

Andrew Ketterer, Attorney General, Ruth E, McNiff, Asst. Atty. Gen., Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] James D. Sawyer appeals from the judgment of the Superior Court (Cumberland County, *Mills, J.*) affirming the Board of Licensure in Medicine's denial of his application for reinstatement of his license to practice medicine. Sawyer argues that he was denied procedural due process because he was not given adequate notice prior to his hearing of the unprofessional conduct that ultimately formed the basis for the denial of his reinstatement and because the Board did not introduce evidence of the professional standard of care to which he was being held. We find no merit to his constitutional challenge and, because we find Sawyer's appeal to be frivolous, impose sanctions of $500.

I.

[¶ 2] Sawyer was originally licensed to practice medicine in Maine in 1982. He allowed his license to lapse in 1995 while he was out of the state. He filed an application for reinstatement with the Board in 1997. At the time he filed his application, the Board had before it two unresolved complaints against Sawyer filed by patients.

[¶ 3] On receiving Sawyer's application for reinstatement, the Board solicited information from Sawyer's prior employers in Maine. The comments received in response consistently reflected concerns about Sawyer's interactions with co-workers and patients, as well as concerns about Sawyer's ability to prevent his personal problems from interfering with his professional responsibilities.

Craig A. Bramley, Esq., Berman & Simmons, P.A., Lewiston, for plaintiff.

[¶ 4] The Board issued a preliminary denial of the application. In its letter

notifying Sawyer of the preliminary denial, the Board cited Sawyer's pattern of "questionable professional judgement and inappropriate behavior," his resignation from one position in the face of hospital discipline, and the two patients' complaints as the basis for its denial.

[¶ 5] Sawyer appealed the preliminary denial and the Board sent him notice of an adjudicatory hearing scheduled for January 13, 1998. The letter informed Sawyer of his rights, including the right to be represented by an attorney and his right to call witnesses. It also informed him that he would bear the burden of proving that he was qualified for a medical license at the hearing.

[¶ 6] The letter was sent on December 9, 1997 and the return receipt indicated that it was picked up on December 17, 1997. Sawyer contacted the Board by phone at 5:10 p.m. on the day before the hearing to notify it that he would not be able to attend, indicating that he had been unaware of the scheduled proceeding until that very day. He also faxed the Board a letter further explaining the difficulty of his situation and his reasons for being unable to attend. Sawyer did manage to appear at the hearing explaining that, although he had received the notice of the hearing in December, he had not opened it until the day before the hearing.

[¶ 7] In the course of the hearing, Sawyer gave testimony to the Board on the history of his practice of medicine. He explained that the unfavorable comments received by the Board were the result of problems stemming from long hours and stress. He also chronicled his history of marital difficulties, his divorce, and ensuing personal and financial difficulties. He attributed the incidents described in his performance evaluations spanning several years to these circumstances and stated that an administrator at one of the hospitals had a vendetta against him and had singled him out for discipline. Sawyer explained that he was currently bogged down with litigation against the Department of Human Services, bankruptcy proceedings and his lack of a stable address. He denied, however, that his stress level was interfering in any way with his business before the Board. He told the Board that he was much more in control of his personal life than at the time he received the unfavorable comments from his previous employers. At the time, Sawyer was licensed and practicing medicine in New Hampshire.

[¶ 8] The Board elected to continue the hearing for several months to allow Sawyer time to sort out his personal issues and submit additional evidence regarding his qualifications for a medical license. The Board issued an interlocutory order reflecting that Sawyer had agreed to allow the Board to contact his current employer, as well as to contact his lawyers regarding pending legal matters. The order also provided that Sawyer would provide a detailed performance evaluation from the hospital at which he was working in New Hampshire and status reports of his legal proceedings.

[¶ 9] Thereafter, the attorney for the Board twice sought releases from Sawyer for these purposes, but received no response to her letters. The return receipt for the second letter indicated that the letter went unclaimed. Nor did Sawyer ever provide the performance evaluation or the status reports described in the Board's interlocutory order. The second hearing date was eventually scheduled for September 8, 1998 despite Sawyer's failure to comply with the Board's requests or reply to the Board's correspondence. Notice of the hearing date was sent to Sawyer on August 3. The notice again informed Sawyer that he had the right to be represented by an attorney and bore the burden of proof at the proceeding. Sawyer failed to appear for the September 8 hearing.

[¶ 10] The Board made the preliminary denial final based on a determination that Sawyer had displayed a history of ques-

tionable professional judgment, including his behavior before the Board, that amounted to unprofessional conduct. Sawyer thereafter sought review of the final agency action pursuant to M.R. Civ. P. 80C and a new hearing based on his claim that he had been denied his right to due process. The Superior Court denied his request for a new hearing and affirmed the decision of the Board. Sawyer then appealed to this Court.

## II.

[¶ 11] We review administrative decisions directly for abuse of discretion, errors of law, or findings unsupported by the evidence. *See Balian v. Board of Licensure in Med.*, 1999 ME 8, ¶ 9, 722 A.2d 364, 366. Sawyer argues that the process he was accorded in this case regarding his application for reinstatement of his license to practice medicine was constitutionally infirm. He challenges both the effectiveness of the notice concerning the basis for the preliminary denial and the absence of evidence on the relevant standard of professional conduct governing his license denial. He argues that he was denied the opportunity to effectively address these issues as a result.

[¶ 12] Without deciding the issue, we will assume for purposes of this case that Sawyer had a sufficient property interest at stake in the reinstatement process to trigger constitutional due process protection. *See* 32 M.R.S.A. § 3280–A(4) (1999); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (holding that to have a property interest in a benefit, a person must have a legitimate claim of entitlement to it rooted in a source such as state law).[1] Nevertheless, we find a conspicuous *lack* of constitutional inadequacies in the proceedings in this case.

1. Because orders such as the one at issue in this case are also reported in a data bank available to other states that are considering licensing a doctor, Sawyer also arguably has a liberty interest at stake in the reinstatement

[¶ 13] The Board's notice of its preliminary denial stated its specific concerns about Sawyer's professional judgment, citing both the two patient complaints and the incident that resulted in his resignation from one of his previous positions. Furthermore, the statute governing reinstatement states the conditions pursuant to which the Board may reject an application for reinstatement of a license to practice medicine, including circumstances in which the Board finds the doctor has engaged in conduct that would subject the doctor to professional discipline. *See* 32 M.R.S.A. § 3280–A(4)(C) (1999). Grounds for discipline include incompetence, fraud, deceit, or unprofessional conduct violating a standard of professional behavior. *See* 32 M.R.S.A. § 3282–A(2) (1999).

[¶ 14] Additionally, this proceeding concerned an application for reinstatement and did not involve revocation of Sawyer's license. As a result, Sawyer bore the burden of demonstrating that he met the requirements for reinstatement and was qualified for a license. *Compare Balian*, 1999 ME 8, ¶ 12, 722 A.2d at 367 (noting that doctor was in position of having to rebut the case against him in proceeding regarding potential revocation of license).

[¶ 15] Although Sawyer testified at the initial hearing date and attempted to explicate the series of negative performance evaluations that the Board had cited in its preliminary denial, thereafter he failed to provide information specifically requested by the Board, failed to respond to correspondence from the Board, failed to cooperate with the Board's efforts to obtain evidence supporting his application for reinstatement and failed to appear for the second hearing in a proceeding in which he bore the burden of proof. Sawyer was not denied an opportunity to present his case in support of reinstatement by virtue of

proceedings. The stigma associated with a denial of reinstatement could impinge on his ability to secure licensure in other states. *See Roth*, 408 U.S. at 573–74, 92 S.Ct. 2701.

the Board's administration of the proceedings. Rather, he failed to take the several opportunities afforded him by the Board to demonstrate his qualifications for a license to practice medicine.

██ [¶ 16] Sawyer not only failed to contest the constitutionality of the Board's proceedings when he appeared at the first hearing, *cf. New England Whitewater Ctr., Inc. v. Department of Inland Fisheries and Wildlife*, 550 A.2d 56, 58 (Me.1988) (noting that the failure of a party to raise a due process challenge at the administrative level denies the administrative body the opportunity to take remedial measures that would obviate the need for an appeal), he did not even appear for the second hearing. To come before this Court now and argue that the *Board* denied him his constitutional right to due process constitutes a frivolous appeal.[2] We therefore order sanctions payable to the Board in the amount of $500 pursuant to M.R. Civ. P. 76(f).

The entry is:

Judgment affirmed with sanctions against petitioner and his counsel in the amount of $500.

---

2. We note that the Board's final denial of his application for reinstatement does not forever preclude Sawyer from obtaining a license to practice medicine in Maine. Sawyer is free to reapply for reinstatement or apply for a new license. *See* 32 M.R.S.A. § 3280–A(4)(A) (1999).